The Valspar Corporation (successor, through merger, to Valentine & Company) v. Commissioner.
Valspar Corp. v. Commissioner
Docket No. 7621.
United States Tax Court
1946 Tax Ct. Memo LEXIS 9; 5 T.C.M. (CCH) 1110; T.C.M. (RIA) 46296; December 23, 1946
Earl A. Darr, Esq., 1 Wall St., New York 5, N. Y., and Charles A. Roberts, Esq., for the petitioner. Clay C. Holmes, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion LEMIRE, Judge: This proceeding involves an income tax deficiency of $54,063.77 for the fiscal year ended November 30, 1937. The deficiency was determined against Valentine & Company, a wholly owned subsidiary of the Valspar Corporation, with which it was merged in 1938. The corporations have joined in the petition filed in this proceeding. The term petitioner as hereinafter used will refer to the Valpsar Corporation. At the hearing the petitioner withdrew one of the issues, relating to the deduction of a reserve for bad debts, and the respondent in his brief *10 has conceded another issue relating to the inclusion in gross income of an amount taken from a "reserve for drums", set up in Valentine & Company's books in prior years and partially restored to surplus during the taxable year. The remaining issues are (1) whether an amount received by Valentine from an insurance company in settlement of an alleged employee's defalcation constituted taxable income; (2) whether accrued federal capital stock taxes for the year ended June 30, 1937, are deductible in the fiscal year ended November 30, 1937, and (3) whether in computing undistributed net income for 1937 petitioner is entitled to a credit under Section 26(c) on account of a contract restricting the payment of dividends. General Facts The petitioner is a corporation, with its principal office at 11 East 36th Street, New York, N. Y. It filed its return for the taxable year with the Collector for the Third District of New York. The petitioner is successor to another corporation of the same name which was reorganized in 1934. Valentine & Company, hereinafter referred to as Valentine, was one of several wholly owned subsidiaries of the petitioner. It was merged with the petitioner on March 25, 1938. In *11 this merger petitioner assumed all of Valentine's obligations. Issue I - Employee's Defalcation Findings of Fact. - At some time prior to or during 1933, the manager of Valentine's Detroit office formed a collecting agency to which he turned over a number of the company's accounts for collection. These accounts were collected mostly in the years 1933 to 1936, inclusive, and commissions were charged which Valentine paid and deducted as expenses in its income tax returns for those years. In the latter part of 1936, or early in 1937, Valentine discovered the nature of the transactions and made claim against an insurance (indemnity) company for $8,402.75, including the commissions of approximately $7,400 and some $700 collections which the agency never remitted. In settlement of the claim Valentine recovered $4,039.95 from the insurance company in 1937. Valentine reported net losses of over $100,000 in each of the years 1933, 1934 and 1935, but reported net income in 1936. The Commissioner has included the amount of $4,039.95 in petitioner's gross income for 1937. Opinion. - The petitioner argues in its brief that the amount received from the insurance company in 1937 is not includible *12 in gross income for that year "because (a) it did not represent recovery of a 'loss sustained' in a prior year, and (b) Valentine had had no tax benefit from deduction of any such loss in any prior year." We cannot verify either of those facts from the evidence of record. The claim which Valentine filed with the insurance company was in part for the collection fees which it had charged to expenses in prior years and in part for monies which the employee had collected and failed to remit The latter amount would appear to have been a loss from defalcation or embezzlement. In any event, under the tax benefit theory, the amount of the loss or expenses recovered would be includible in gross income to the extent that its deduction resulted in a tax benefit in a prior year. See Regulations 111, Section 29.22(b)(12)-1, as amended by T.D. 5307 and T.D. 5454. We cannot determine from the evidence before us what portion of the expenses deducted in prior years resulted in tax benefits. The petitioner's comptroller, the only witness to testify on this point, on being asked if he had made any breakdown of the charges of commissions as among the several years, stated that *13 "the major portion of these charges, I would say * * * two-thirds of them, applied to the years of 1933, 1934 and 1935." Valentine reported taxable income of an undisclosed amount in 1936, and we must assume that it obtained a tax benefit from the full amount of the expense charges made in that year. We think that the offhand and unverified estimate of the comptroller as to the amounts of commissions charged off in the loss years fails to meet the burden of proof required of the petitioner. This was a fact that might easily have been ascertained from the books of the company. It is to be noted that Valentine's claim against the insurance company covered not only the commissions paid to the collecting agency, but also $736.43, which was not remitted. That amount was clearly a loss due to embezzlement which petitioner was entitled to deduct in a prior tax year, if not compensated for by insurance or otherwise. We do not know in what years the loss occurred. That would depend upon when the accounts were collected and when the remittance was due. Neither do we know what portion, if any, of the loss was recovered from the insurance company. We think that the petitioner has failed to meet *14 the burden of proof on this issue. Issue II - Federal Capital Stock Accruals Findings of Fact. - Valentine kept its books and made its income tax returns on an accrual basis and on the basis of a fiscal year ending November 30. In its return for the year ended November 30, 1937, it claimed a federal capital stock tax deduction of $3,557. The Commissioner disallowed the deduction in whole, stating in his deficiency notice: It is held that the capital stock tax due for your capital stock taxable year ended June 30, 1937 is not a proper deduction in computing net income for income tax purposes for the fiscal year ended November 30, 1937. The petitioner alleges in its petition filed in this proceeding, under "Issue IV" that the Commissioner erred in "The disallowance of deduction by Valentine of $3,557 accrued as liability for Federal capital stock tax, pursuant to a method which clearly reflected the income of Valentine and was consistently followed by Valentine for tax purposes." It is alleged in paragraph 20 of the petition, and admitted by the respondent in his answer, that "The facts as to this item [the deduction for capital stock tax] are as set forth by the Revenue *15 Agent in paragraph (f) of Schedule 1-A to his report, Exhibit B hereto." Paragraph (f) of Schedule 1-A, Exhibit B, referred to in the petition, is as follows: The Federal capital stock tax previously allowed in excess of amount due is disallowed as a deduction as follows: Amount deducted on return
$3,557.00
Less amount disallowed previously
2,357.00
Amount of deduction previously
allowed
1,200.00
Amount due for the fiscal year ended
June 30, 1938
None
Amount disallowed
$1,200.00
Opinion. - We are unable to determine on the evidence of record just what are the facts with respect to the capital stock tax deduction issue. The petitioner's comptroller, on being asked to explain how the accruals of capital stock taxes were created on Valentine's books, stated: It has been our custom to set up monthly accruals on capital stock taxes. We - at the end of each fiscal year, we have set up in those accruals a full twelve months accrual. In other words, as of November 30, we have accrued for the payment that we are going to make in the following June or July, whatever the date was for that payment. That, briefly, is our procedure. On the basis of month by month *16 accruals of the capital stock taxes, those accrued on Valentine's books at November 30, 1937, could not have been the taxes for the full capital stock tax year ended June 30, 1938, which were to become due and payable July 1, 1938. If the facts are as set forth in the copy of the deficiency notice attached to the petition, and it is so alleged by the petitioner and admitted by the respondent, the capital stock taxes which Valentine claimed as a deduction in its return for the taxable year ended November 30, 1937, were those for the capital stock tax year ended June 30, 1937. Obviously, those were taxes that should have been accrued in the return for the fiscal year ended November 30, 1936. See Budd International Corp., 45 B.T.A. 737. The facts of record do not disclose just what capital stock taxes Valentine had accrued on its books at November, 1937. On this state of the evidence we cannot find that the Commissioner committed any error in his disallowance of the deduction claimed by Valentine in its return. Issue III - Contracts Restricting Payment of Dividends Findings of Fact. - In connection with the reorganization in 1934, referred to above, Valentine became *17 indebted to a group of creditor banks on its promissory notes for $1,133,300. The notes became due December 1, 1937. During 1937, $15,887.44 was paid on the principal of the notes, leaving an unpaid balance at November 30, 1937, of $1,117,412.56. All of the notes contained the following provisions relating to amortization and restriction on the payment of dividends: The Company [Valentine] covenants and agrees with the respective holders of the Notes that for amortization of the Notes the Company will apply to the redemption of the principal amount thereof, pro rata, on the first days of June and December in each of the calendar years 1935 and 1936 and on the first day of June in the calendar year 1937, an amount equal to one-third of the net income of the Company, as hereinafter defined and determined, in the last completed semi-annual fiscal period of the Company ended not less than three months prior to the redemption date. The term "net income" shall mean gross income after deduction of all charges of proper character, including therein returns and allowances, cost of goods sold, operating expenses, interest (including interest on the Notes), adequate provision for depreciation *18 and reserves, taxes of every character (including Federal and other income taxes and any profits taxes) and proper amortization of deferred charges, all as determined and approved in accordance with sound accounting practice by the Auditors hereinafter referred to; provided, however, (1) that for the purpose of determining the amount, if any, to be applied to any such redemption the net income of the Company in any such last completed semi-annual fiscal period shall be deemed to mean only the amount, if any, by which (a) the net income in such semi-annual fiscal period is in excess of (b) any accumulated deficiency in net income of the Company in the period commencing December 1, 1934 and ending at the beginning of such semi-annual period, all as determined by said Auditors; * * * * *
The Company covenants and agrees with the respective holders of the Notes that, so long as any of the Notes of this issue are outstanding: * * * * *
(2) The Company will not declare or pay any dividend (other than one or more stock dividends and/or special dividends for the purposes contemplated by the Plan of Reorganization of The Valspar Corporation dated February 2, 1934, as modified) *19 on any class of its stock except to the extent of the accumulated net earnings of the Company in excess of the accumulated net losses, if any, from December 1, 1934 to the close of the month immediately preceding the month in which any such dividend is declared * * *; all as determined and approved in accordance with sound accounting practice by the Auditors herein referred to, who, in determining "net earnings" and "net losses" for the foregoing purpose, shall be guided, in so far as they may consider appropriate, by the provisions hereinabove set forth in respect of "net income" and "deficiency in net income"; (3) That the Company shall procure an annual audit report of the accounts of the Company to be made by Price, Waterhouse & Co. (or its successors in business) * * *. Prior to the close of the taxable year 1937, Price, Waterhouse & Co. had not made any audit showing an excess of accumulated net earnings over accumulated net losses for any period after 1934. An audit was made by the firm during 1938, dated January 13, 1938, showing a deficit at December 31, 1936, accumulated since 1934, of $63,115.56, a net profit for the year ended November 30, 1937, of $141,622.03, and *20 a net accumulated surplus at November 30, 1937, of $78,506.47. Throughout the fiscal year ended November 30, 1937, the authorized and outstanding capital stock of Valentine and Valspar was held in a voting trust and both companies were under the management of the same directors, who were appointed by the voting trustees. The voting trustees consisted of representatives of the creditor banks, the preferred stockholders and the common stockholders, and also the general counsel for the companies and the president of Valspar. The 1934 reorganization agreement provided that Valspar might borrow from the bankers up to $75,000 to pay the expenses of the receivership and the reorganization, and that, to the extent necessary, Valentine might issue a special dividend to repay the amount so borrowed. Pursuant to this authorization, Valspar borrowed $45,000 for reorganization expenses, all of which was repaid prior to January 23, 1935, in part with a special dividend by Valentine of $40,000 and the balance with funds from other sources. Valentine was prohibited throughout its taxable year 1937 from paying any dividends in excess of its accumulated net earnings. Since 1934 such net earnings *21 amounted to $78,506.47 at November 30, 1937, less any income tax deficiency which may be determined in this proceeding for such taxable year. Opinion. - Under Section 26(c) of the Revenue Act of 1936, taxpayers were allowed a credit of An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. * * * The respondent recognizes that during the taxable year Valentine was prohibited, under the provisions of the reorganization of 1934 and of the promissory notes which it issued in the reorganization, from using any dividends but "special or stock dividends" for the purpose of paying the reorganization expenses until, and except to the extent that, it had net earnings accumulated since 1934. He argues, however, that the evidence does not show that the reorganization matters had ever been completely settled or that the conditions under which the special or stock dividends could be issued were not present during the taxable year. *22 This contention, we think, is without merit. It is shown by the minutes of a meeting of Valspar's board of directors, held January 23, 1935, that the company had previously borrowed $45,000 for the purpose of paying the reorganization expenses, and that $40,000 of that amount had been repaid by the issuance by Valentine of a special dividend as contemplated by the plan of reorganization. There is nothing in the evidence to indicate that there were any other reorganization expenses or that this was not a complete settlement of the matter. Valentine was free at all times to issue dividends out of its accumulated net earnings since 1934. These net earnings at the close of the taxable year 1937 amounted to $78,506.47, as shown by the Price, Waterhouse & Co. audit dated January 13, 1938. The credit to which petitioner is entitled under Section 26(c) is the difference between that amount, reduced by any deficiency in 1937 taxes determined in this proceeding, and petitioner's adjusted net income for the taxable year. Decision will be entered under Rule 50.